## AKERLY vs. VILAS, impleaded with others.

RESCISSION OF CONTRACT—*Delivery, absolute or conditional?— Validity of bonds for purchase money, with partial failure of consideration—*COUNTER-CLAIMS, *in action for purchase money: Breaches of covenants: Refusal to assign and transfer certificates of shares in land company: Slander of title—*PRACTICE. *Objection to counter-claim, for defect of parties: Costs in supreme court, on appeals by both parties.*

1. Where one, having a right to rescind a contract for the sale and purchase of lands, after knowledge of all the facts giving him such right, continues to claim the lands under the contract, and to exercise acts of ownership therein, he cannot subsequently rescind.

2. A delay of several years after such knowledge, to tender back a deed of the lands, and to seek a rescission, would of itself be conclusive against the claim to rescind.

3. Where L., being empowered only to sell the lands of A. and B. in the city of P., agreed to sell V. said lands and also other lands of A. and B. in G. county, for one entire consideration, and executed and delivered to V., in the name of his principals, a deed of the lands in P., and at the same time (by a written instrument executed by both himself and V.) agreed to procure the G. county lands to be deeded to V. by a specified time, or that their value should be paid by him as stipulated damages, or deducted from the purchase money, and thereupon V. executed his bonds secured by mortgage for the purchase money, and delivered them to L. as such agent, but the G. county lands never were so deeded: *Held,*

(1.) That these facts show an *absolute*, and not a *conditional*, delivery of the bonds and mortgage.

(2.) That they do not show the bonds and mortgage to be invalid.

(3.) That the non-conveyance of the G. county lands might be set up in defense to a foreclosure of the mortgage, as a partial failure of the consideration.

4. Said deed also purported to convey the grantors' shares in certain land companies, owning lands in P.; and L. agreed at the time of the sale to send the grantee, duly assigned, all the certificates of shares in said companies in the grantors' possession, but they refused to make such assignment and transfer. *Held,*

(1.) That the deed was effectual to convey all the equitable interest of the grantors in the lands of said companies.

(2.) That the failure to assign and transfer the certificates could not be set up to show a partial failure of the consideration for the bonds and mortgage.

5. In an action for the purchase money of land, breaches of the grantor's covenants are grounds of counter-claim, under the code.

6. For a breach of the covenant of seizin, grantee may recover, in such an action, his actual damages, though in undisturbed possession.

7. Where one of the grantors of land sues on bonds for the purchase money as sole owner, an objection to a counter-claim for breach of covenants on the ground that the other grantor is not a party, must be taken by answer or demurrer, or it is waived.

8. Plaintiff appealed from a judgment declaring his bonds and mortgage invalid. Defendant also appealed from the judgment for alleged error in striking out his counter-claims, and rejecting evidence in support of them; and printed in his "case" said evidence, and also that included in plaintiff's bill of exceptions. This court, holding the bonds and mortgage to be valid, and that one of the counter-claims was improperly stricken out, reverses the judgment on both appeals, and allows plaintiff the full costs of his appeal, and defendant the costs of his, except disbursements for printing the evidence.

APPEALS from the Circuit Court for *Dane* County.

Foreclosure of a mortgage on lands in said county, executed by the defendants *L. B. Vilas and wife*, in September, 1855, to the plaintiff and Mrs. Louisa S. Lord, to secure bonds of said *L. B. Vilas*. These bonds were for the aggregate sum of $13,000, the purchase money of certain lands in Prairie du Chien, and in Grant and Green counties in this state. The answer of *L. B. Vilas* sets up several grounds of defense and counter-claim. 1. It alleges, in substance, that in August, 1855, he negotiated with the plaintiff and Mrs. Louisa S. Lord, in the state of New York, for the purchase of certain lots and blocks in Prairie du Chien, and 160 acres in Grant county, and 80 acres in Green county in this state, and 100 shares in the undivided property of Prairie du Chien Land Company No. 1, and 150 shares in the stock of Prairie du Chien Land Company No. 2, which they claimed to own as tenants in common, and that the plaintiff agreed to sell said property for the gross sum of $13,000, subject to the assent of Mrs. Louisa S. Lord; that said Louisa was unwilling at that time to assent to said agreement, and it was not then consummated; that the plaintiff and Mrs. Lord entrusted the final decision of the matter to Frederick W. Lord (her husband), who was to come to Wisconsin to ascertain more fully the value of said property; and to enable him to consummate the sale, should he deem it advisable, the plaintiff and Mrs. Lord were to execute powers of attorney authorizing him to dispose of and convey said property; that said Frederick came to Wiscon-

sin, and in September, 1855, agreed that the plaintiff and Mrs. Lord should convey to this defendant all of said property for the sum above mentioned as one entire transaction, no specific price being mentioned for any separate parcel of it; that when said Frederick was about to execute the necessary papers to perfect the sale and transfer of said property, it was ascertained that he had not full power to execute the necessary conveyances and transfers, but that he only had powers of attorney purporting to be executed by the plaintiff and Mrs. Lord, empowering him to sell and convey the plaintiff's land in Prairie du Chien and Mrs. Lord's lands in Wisconsin; but it being supposed that the plaintiff and Mrs. Lord would perfect said sale and transfer, said Frederick, as their attorney in fact, and for himself as the husband of Mrs. Lord, executed a deed in their and his own name, purporting to convey to said defendant said lots and blocks in Prairie du Chien, and 100 shares in the undivided property of Prairie du Chien Land Company No. 1, and 150 shares in the property of Prairie du Chien Land Company No. 2, and generally all the lots, blocks and property of the grantors in Prairie du Chien; and it was agreed that a deed should be executed by the plaintiff and Mrs. Lord (the said Frederick joining therein) conveying to this defendant the said land in Grant and Green counties, and that a proper transfer should be made by them of the certificates representing the shares in the property of said land companies which the plaintiff and Mrs. Lord claimed to own, all of which were to be transmitted to the defendant by the 1st of October then next; and in consideration of the conveyance then executed by said Frederick as aforesaid, and of the conveyances and transfers so to be made by the plaintiff and Mrs. Lord, the defendant executed and delivered to said Frederick the bonds and mortgage described in the complaint, "and never delivered the same or caused them to be delivered to the plaintiff or Lord, or to any other person, or in any other manner whatever;" that the

plaintiff and Mrs. Lord refused to convey to the defendant the lands in Grant and Green counties, or to transfer to him said certificates of stock, and he has never received any conveyance or transfer of the same or any part thereof, but on the contrary the plaintiff refused in any manner to ratify said sale, or to accept said bonds and mortgage, but repudiated the whole transaction, and had, until a short time before the commencement of this action, disclaimed any interest in said bonds or mortgage; that in September, 1856, the plaintiff commenced an action in the U. S. Court for the district of Wisconsin to set aside said deed as unauthorized by him or Mrs. Lord, and prosecuted it until shortly before the commencement of this action, when it was abandoned, and also resisted a partition of the lands belonging to said Land Company No. 2, claiming to be still the owner of 75 shares of stock therein (being the same which the defendant had attempted to purchase); that said Prairie du Chien Land Companies Nos. 1 and 2 were joint stock companies, whose property was vested in trustees, and the shares therein represented by certificates of stock transferable by assignment and delivery, the possession and holding of which was an indispensable requisite to the having or enjoying any interest or property therein; that the property represented by said certificates, together with said Grant and Green county lands, formed a large part of the consideration of said bonds and mortgage; that for any purpose except as city or village lots, the whole of the Prairie du Chien property which the defendant proposed to purchase would not have been worth over $3000, and his only object in attempting to purchase it was that he might sell it in parcels after an anticipated rise in value by the prospective location of a railroad depot and buildings in their immediate vicinity; that in the year 1856, the anticipated advance in value of said property had taken place, and the property could have been sold in parcels from time to time for from $100,000 to $150,000, and said value continued

substantially the same until the fall of 1857, when it declined, and in about a year afterwards the demand for said lands for town and city purposes had for the most part ceased ; that the plaintiff prosecuted his said suit in the district court, to set aside said deed, from September, 1856, until the spring of 1859, and in consequence thereof and of his refusal to perfect said conveyance and sale, the defendant was unable to sell any of said property, except a few of the lots embraced in the deed made by said Frederick, which were sold while the defendant had hopes that the sale to him would be perfected, and before purchasers had learned the situation of the title; that to protect said property from incumbrance, and enable the defendant more readily to sell it, he and plaintiff agreed, " at the time of said conditional sale," to transfer the mortgage then to be executed thereon, to other property, as soon as the signature of defendant's wife could be obtained, and for the same purpose said Lord took the mortgage here in suit, upon defendant's farm in Dane county ; that toward the close of the litigation commenced by said plaintiff, all opportunities to make sale of said Prairie du Chien lands as village property having been lost by the conduct of the plaintiff, the defendant became willing and offered to give up all claim to any of said purchase on equitable terms, but the plaintiff did not accede to such proposal, and soon after discontinued his said suit ; and the defendant was still ready to give up all claim, if any he might otherwise have, under said deed, on such terms as might be just. Wherefore he denied that the bonds and mortgage were binding upon him, or that there was any sum due thereon.    2.  " For a further and separate defense, and by way of counter-claim," the answer avers substantially the same facts above stated, and alleges also that the lands in Prairie du Chien were conveyed to the defendant by the plaintiff and Louisa S. Lord by their agent, Frederick Lord, at the date of said bond and mortgage ; that their deed of conveyance contained covenants of lawful

seizin and of general warranty; that the plaintiff and Mrs. Lord were not well seized of the property which was represented by said certificates, and had no authority to convey the same as they undertook to do, and also that they had no title to or seizin of lots 3, 4, 5, 6, 7 and 8, in block 1, which were specifically described in said deed, and that the defendant could not lawfully take possession thereof; that the defendant was at great trouble and expense in his efforts to promote the growth of that part of Prairie du Chien in which the property he contracted to purchase from the plaintiff and Mrs. Lord was situate; that said plaintiff had no reasonable or probable cause for his action in the district court to set aside said conveyance executed by said Frederick Lord, but that the same was prosecuted maliciously and wrongfully, with the sole view of injuring the defendant; that said Frederick died in June, 1860, leaving the plaintiff the only person legally bound by the covenants in said deed, and that the defendant has suffered damages by said breaches of covenant and by the acts of the plaintiff in hostility to his title, to the amount of $100,000. 3. The answer sets up a counter-claim based upon the refusal of *Akerly* " to complete the said sale," and his slander of defendant's title to the Prairie du Chien lands, in the suit above mentioned in the U. S. district court, to set aside the deed executed by Lord; which suit is alleged to have been brought by him without having any reasonable or probable cause of action, but wrongfully contriving and intending to injure the defendant; and facts are specially alleged to show that by this course of conduct plaintiff had prevented defendant from selling certain of said lands to his damage, &c. 4. For a further counter-claim, the answer alleges, in substance, a like slander of defendant's title to said lands, in the answer filed by plaintiff in the partition suit above mentioned.

On plaintiff's motion, defendant was required to elect which of the defenses set up in his answer he would rely upon—the

court holding that the first defense was inconsistent with all the others; and defendant (excepting to said order) elected to proceed under the first, and the others were stricken out.

Of the voluminous evidence introduced at the the trial, only the following need be stated: 1. So much of the testimony of the defendant as is referred to in the opinion of the court: "On the 4th of September, Dr. Lord and I looked over the [mortgaged premises,] and he examined the abstract of the title and was satisfied with the security; and we set that afternoon to make the papers at my library room, and Mr. Roys was to draft them. When we met for that purpose it was discovered that the power of attorney from *Mr. Akerly* was limited to his lands in Prairie du Chien, and Dr. Lord appeared much surprised, and said that it was a mistake; that he knew *Mr. Akerly* intended to give him full powers to sell all his lands in Wisconsin. He also ascertained that he had not with him the certificates for the undivided shares in the land companies, which he said he supposed were in a bundle of papers sent him by *Mr. Akerly* that he had not before opened. * * There was something then said about postponing the execution of our contract, but Dr. Lord said that that was unnecessary; that if I would give him until his return home to fulfil these particulars, it would be all right. I asked him how long he wanted, and he said the 1st of October would be sufficient; and that time was then agreed to be given him to give me the conveyance of the Grant and Green county lands, and deliver me the certificates of stock in the Prairie du Chien Land Companies Nos. One and Two, and the deeds of the Prairie du Chien lands; and bonds for the consideration of the whole purchase were to be then executed, and the mortgage to secure the same. I left the room for a short time, and he and Mr. Roys were to complete the papers for signing. When I returned, they were nearly all completed. We then executed the deed of the Prairie du Chien lands, and the several bonds for thirteen

thousand dollars, and the mortgage to secure them, and the contract to give to the 1st of October to deliver the deeds for the Grant and Green county lands. I at first objected to signing that, and said that it ought not to have been made for me to sign. Mr. Roys said that it would do no harm, and I signed it. I then discovered that they had omitted to mention in the writing the assignment and delivery of the certificates in the land companies, and the doctor said that was so, and took a pen and wrote and signed at the bottom the agreement about them, but omitted to name the 1st of October as the time agreed upon, and I did not notice the omission. He had also agreed to send me their abstract of title to all the lands, and I minuted it in pencil under this last agreement of Dr. Lord, in his presence, and he said that was just as well, and that I should have them all before the first of October. He then gave me the powers of attorney, and five dollars to pay for recording them and his share for making the papers, as he said, and directed me to have the powers of attorney recorded when I did my deed, and have them recorded first. He took the bonds and mortgage, and left the mortgage himself with the register of deeds in Dane county, paid for the recording, and directed the register of deeds to send it to him at Greenport when recorded. These papers were all executed at the same time, but in what order I am unable to specify with certainty." 2. The answer of *L. B. Vilas* to the plaintiff's bill in the U. S. district court, referred to in the opinion of this court, contains the following allegations: "That the said Lord, on his own behalf and as the attorney in fact for the said orator and the said Louisa S. Lord, executed and delivered to this defendant a deed in due form of law, of all the lands described in the orator's bill as situate in Prairie du Chien, and at the same time delivered the several powers of attorney to this defendant for record in the register's office in Crawford county, where the said lands lie, and the same, together with said deed, have been duly recorded.

At the same time this defendant executed and delivered to said Lord, as their duly authorized attorney, for the full consideration of said purchase, three bonds [describing the bonds in suit]; and, at the same time, or the 4th day of September, 1855, this defendant and his wife executed to said orator and Louisa S. Lord a mortgage on his farm in Dane county [being the mortgage here in suit]; * * * and delivered the same to the said Lord as the attorney of the orator and Louisa S. Lord, who caused the same to be duly recorded," &c., &c.

The court found, in substance, that the material averments of the defense were true, and held that the bonds and mortgage in suit were void. Judgment for the defendants accordingly; and both the plaintiff and the defendant *L. B. Vilas* appealed.

*Finches, Lynde & Miller,* for the plaintiff:

1. On the failure of Mr. Lord to have a deed of the Grant and Green county lands executed and delivered, and to deliver the certificates of stock, on the first of October, 1855, the defendant could at once have returned the deed, agreement and powers of attorney, and rescinded the contract. *Weeks v. Robie,* 42 N. H., 316; *Webb v. Stone,* 24 id. (4 Foster), 288; *Allen v. Webb,* id., 278. A party having once been entitled to rescind a contract because it had not been performed in reasonable time, if he do any act which amounts to an admission of the existence of the contract, cannot afterwards elect to treat it as void. *Brinley v. Tibbets,* 7 Greenl., 75; *Lindsey v. Gordon,* 13 Me., 60; *Barry v. Palmer,* 19 id., 303; *Lawrence v. Dale,* 3 Johns. Ch., 23; *Masson v. Bovet,* 1 Denio, 69; *Selway v. Fogg,* 5 Mees. & W., 83; *Weeks v. Robie, Webb v. Stone,* and *Allen v. Webb, supra.* 2. The defendant, having entered into possession of the land, taken the rents and profits, and sold portions of the property, under a full covenant warranty deed, cannot defeat the mortgage given to secure the purchase price thereof, by showing a partial failure of title. He must seek his remedy

on the covenants in his deed. *Hill v. Butler*, 6 Ohio St., 216; *Bumpus v. Platner*, 1 Johns. Ch., 213; *Abbott v. Allen*, 2 id., 519; *Patton v. Taylor*, 7 How. (U. S.), 132; *Edwards v. Bodine*, 26 Wend., 109; *Maner v. Washington*, 3 Strob., 171; *Lamerson v. Marvin*, 8 Barb., 11; *Noonan v. Lee*, 2 Black (U. S.), 499; *Platt v. Gilchrist*, 3 Sandf., S. C., 118; *Rawlins v. Timberlake*, 6 Mon., 232; 1 Head, 640; 2 id., 169; *Taft v. Kessell*, 16 Wis., 273. 3. There was in fact no failure of title to any part of the land. The deed conveyed all the shares or certificates in the land companies. 4. The defendant cannot hold the property and refuse to pay for it. *Brumfield v. Palmer*, 7 Blackf., 227; *Osborn v. Dodd*, 8 id., 467; *Barickman v. Kuykendall*, 6 id., 21; *Gaar v. Lockridge*, 9 Ind., 92; *Oldfield v. Stevenson*, 1 Ind., 153; *Burton v. Stewart*, 3 Wend., 238; *Pierce v. Drake*, 15 Johns., 475; *Raymond v. Bearnard*, 12 id., 274; *Nellis v. Bradley*, 1 Sandf., S. C., 560; *Hawkins v. Appleby*, 2 id., 421; *Miner v. Bradley*, 22 Pick., 457; *Clark v. Baker*, 5 Met., 452; *Kimball v. Cunningham*, 4 Mass., 504; *Conner v. Henderson*, 15 id., 320; *Baker v. Robbins*, 2 Denio, 138; *Ash v. Putnam*, 1 Hill, 302; *Voorhies v. Earl*, 2 id., 288; *Masson v. Bovet*, 1 Denio, 74; *Matteawan Co. v. Bentley*, 13 Barb., 641; *Weed v. Page*, 7 Wis., 503; 15 Wis., 679; *Sanford v. Travers*, 7 Bosw., 509; 42 N. H., 316; 24 id., 278, 288.

*E. & C. T. Wakeley* and *Wm. F. Vilas*, for defendant *L. B. Vilas*:

1. The bonds were delivered to Mr. Lord *conditionally*. The condition was, that as the contract in pursuance of which they were executed was not complete and binding upon both parties in consequence of Lord having exceeded his authority, the bonds should not be delivered to *Akerly* and Mrs. Lord, unless they should both ratify it. 2. Said contract never became binding upon *Akerly*. He did not ratify but repudiated it. 3. If, after a continuous repudiation of it for several years, any subsequent act of his might be held to constitute a ratification,

as against himself, yet he could not thereby make it binding upon *Vilas*. *Dodge v. Hopkins*, 14 Wis., 630. 4. If the contract was binding, yet plaintiff cannot recover, because of his refusal to perform the following conditions precedent: (1.) To convey the Grant and Green county lands. (2.) To assign and transfer the certificates of shares in Land Cos. Nos. 1 and 2. *Hunt v. Livermore*, 5 Pick., 395 ; *Johnson v. Reed*, 9 Mass., 78 ; *Kane v. Hood*, 13 Pick., 281 ; *Leonard v. Bates*, 1 Blackf., 172 ; *Bank v. Hagner*, 1 Pet., 455 ; *Judson v. Wass*, 11 Johns., 525 ; *Grant v. Johnson*, 1 Seld., 247 ; *Bean v. Atwater*, 4 Conn., 3 ; *Lyon v. Annable*, id., 350 ; *Sewell v. Wilcox*, 5 Rob. (La.), 83 ; *Chanter v. Leese*, 5 M. & W., 698 ; *McNeil v. Magee*, 5 Mason, 244. That all contemporaneous agreements are to be construed together, see *Norton v. Kearney*, 10 Wis., 443 ; *Makepeace v. Harvard College*, 10 Pick., 298 ; *Reed v. Field*, 15 Vt., 672 ; *Vilas v. Dickinson*, 13 Wis., 488 ; *Hunt v. Livermore*, *supra*. *Akerly* could not enforce one part of the agreement entered into in his name by Lord, and refuse compliance with the other part. He cannot ratify any part of an entire agreement without ratifying the whole. Story on Agency, § 250, and notes; *Reid v. Hibbard*, 6 Wis., 175; *Farmers' L. & T. Co. v. Walworth*, 1 Coms., 443, 447 ; *Benedict v. Smith*, 10 Paige, 126, 130 ; *Newell v. Hurlburt*, 2 Vt., 351.—The effect of the written agreement signed by Lord, is simply that he *guaranties* the performance by *Akerly* and Mrs. Lord of the verbal agreement which he had previously made in their name, and which is recited in said written instrument. There is no evidence that it was intended to release them from their obligation to perform, so that they could recover from *Vilas* the price of the lands, and turn him over to his remedy against Lord, without conveying them.—Nor had *Akerly* and Mrs. Lord the option to convey the lands or deduct their cash value from the face of the bonds. *They* were bound to convey if they undertook to enforce the contract against *Vilas*. But in a suit against Lord

on *his* agreement that they should convey, the cash value of the lands was to be the " fixed and settled damages," and this was to be "paid to the said *Vilas*, or deducted from the first payment upon said bonds." *This* agreement was between *Vilas* and Lord—*not* between *Vilas* and *Akerly*.—Conceding, for a moment, that Lord never undertook, verbally or otherwise, to bind *Akerly*, still the result is the same. The agreement to convey those lands was the consideration in part of the bonds, and therefore the performance of it, *no matter by whom it was to be performed*, is a condition precedent to a recovery.—If, however, upon any ground, it can be held that *Akerly* was not obliged to convey the *lands* as a condition precedent, he was clearly bound to transfer the certificates. Story on Agency, §§ 148, 160 (a) and notes ; *Phelps v. Prothero*, 32 Eng. L. & E., 474 ; *Jones v. Littledale*, 6 Ad. & Ell., 486 [33 E. C. L., 122] ; *Higgins v. Senior*, 8 Mees. & W., 834, 843 ; *Garrett v. Handley*, 4 Barn. & Cress., 664 [10 E. C. L., 438] ; *Bateman v. Phillips*, 15 East, 272 ; *Trueman v. Loder*, 11 Ad. & Ell., 589 [39 E. C. L., 178] ; *Cothay v. Fennell*, 10 Barn. & Cr., 671 [21 E. C. L., 146] ; *Nelson v. Powell*, 3 Doug., 410 ; *Gilmore v. Pope*, 5 Mass., 491 ; *Com. Bank v. French*, 21 Pick., 486 ; *Taunton &c. Turnpike v. Whiting*, 10 Mass., 327 ; *Huntington v. Knox*, 7 Cush., 371 ; *Fuller v. Hooper*, 3 Gray, 334 ; *Beebec v. Roberts*, 12 Wend., 413 ; *Taintor v. Prendergast*, 3 Hill, 72 ; *Edmond v. Caldwell*, 3 Shep., 340; *Garland v. Reynolds*, 20 Me., 45 ; *Salmon Falls Man. Co. v. Goddard*, 14 How. (U. S.), 454–5 ; *Randall v. Van Vechten*, 19 Johns., 60. The defendant could avail himself of the non-performance of this condition, even if the transfer would have been of no value to him. But in fact, in this case, he had no title worth possessing without such transfer. The legal title of the lands was in the trustees. The interest of the shareholder was simply the right to a dividend of the surplus moneys arising from the sales of land by the company ; and the shareholder whose name appeared on

the books, and who had possession of the certificates, was entitled to this dividend. If *Akerly* had assigned the certificates to a *bona fide* purchaser, in conformity with the articles of the association, the purchaser would unquestionably be entitled to a transfer upon the books. *Vilas* therefore derives no benefit from the attempted assignment *in Lord's deed.** Moreover, *Akerly*, by reason of his possession of the certificates, defeated a partition of the lands, and without a partition the evidence shows that the lands were of no value to the owners. 5. The conduct of the plaintiff has been so unjust, oppressive and fraudulent, that a court of equity will not enforce payment of the bonds, even if no technically legal defense appears against them. A vendor whose conduct had been such as has been proven in this case, could not now obtain a decree for specific performance by the vendee, even if he had first tendered a conveyance of the remaining lands and a transfer of the certificates. Story's Eq. Jur., §§ 771, 776–7; *Bryan v. Lofftus*, 1 Rob. (Va.), 12; *McKay v. Carrington*, 1 McLean, 59; *Hynes' Reps. v. Campbell*, 6 Mon., 286, 290; *Garnett v. Macon*, 6 Call (Va.), 308, 370 et seq; *Brashier v. Gratz*, 6 Wheat., 528; *Pratt v. Carroll*, 8 Cranch, 475; *Watts v. Waddle*, 6 Pet., 389, 402; *Holt v. Rogers* 8 id., 420, 433; *Taylor v. Longworth*, 14 id., 172; *King v. Hamilton*, 4 id., 328; *Benedict v. Lynch*, 1 Johns. Ch.,

---

* The "indenture and articles of agreement" of said association were in evidence. Art. VIII provided that "the capital of the association and the beneficial interest of the several shareholders thereof, notwithstanding the conversion of any part or the whole of the capital * * into lands" should be personal property. Art. XIV provided that the shares might be transferred by the holder or his personal representative, by endorsement under his hand and seal, provided notice of such transfer should be given to the trustees, and the assignee should affix his name and seal to said indenture. By the terms of Art. XIX, the persons who executed said instrument (and who thereby became members of the association) conveyed to the trustees of the association all their title to and interest in certain lands therein described. By other articles the capital of said association was defined as consisting of said lands, and such others as the trustees should purchase; and said trustees were authorized to survey, lay off, sell and convey the same, &c.    REP.

370, 377; *McNeil v. Magee*, 5 Mason, 244, 255; *Woodson's Adm'rs v. Scott*, 1 Dana, 470; 5 Vesey, 720 (note); *Alley v. Deschamps*, 13 Ves. Jr., 224; *Hayes v. Caryl*, 5 Viner's Ab., 538, Contract, M., 18; *Brown v. Haines*, 12 Ohio, 1. If the vendor sues for the money in consideration of which he was to convey the land, he cannot insist upon the agreement so far as it is in his favor, and repudiate it so far as it requires him to furnish the consideration. He cannot keep the land because his agreement to convey it was not in writing, and collect the money on his bonds because they were. When the consideration has been paid in advance upon a verbal contract for the sale of lands, and the vendor cannot or will not convey them because the contract is void, or for any other reason, the consideration may be at once recovered back. *Thompson v. Gould*, 20 Pick., 134; *King v. Brown*, 2 Hill, 485; *Buck v. Waddle*, 1 Ham., 168; *Gillet v. Maynard*, 5 Johns., 85; *Rice v. Peet*, 15 id., 503; *Barickman v. Kuykendall*, 6 Blackf., 24; *Burlingame v. Burlingame*, 7 Cow., 92; *Richards v. Allen*, 17 Me., 296; *Lyon v. Annable*, 4 Conn., 350; *Faulkner v. Guild*, 10 Wis., 563; *Adams v. Fairbairn*, 2 Stark., 277 [3 E. C. L., 345]; *Gosbell v. Archer*, 4 Nev. & Man., 485 [30 E. C. L., 390]. And certainly if he could have recovered back the purchase money, had he advanced it, he can defeat a recovery of it now. 6. *Akerly* cannot recover *pro rata* for the land conveyed, the purchase having been *entire*, and he refusing to comply with the contract as made. To this point counsel cited Story's Eq. Jur., §§ 777–8; Dart on Vend., 504–7, and cases there cited; *Peers v. Lambert*, 7 Beav., 546; *Cassamajor v. Strode*, 2 Myl. & K., 706; *Knatchbull v. Grueber*, 1 Madd., 98; *Bowyer v. Bright*, 13 Price, 698; *Jones v. Shackleford*, 2 Bibb, 410; *McConnell v. Dunlap*, Hard. (Ky.), 41; Sugden on Vend., 355 et seq. 7. The court erred in holding that the counter-claims were inconsistent with the first defense. The *facts* stated were not in the slightest degree inconsistent with each other; and it did not

make the several parts of the answer inconsistent, that in one those facts were insisted upon as showing that the plaintiff had no cause of action, while in the others the same facts were urged to show that if he had a cause of action, the defendant had grounds of counter-claim. *Otis v. Ross*, 8 How. Pr., 193 ; *Stiles v. Comstock*, 9 id., 48 ; *Ostrom v. Bixby*, id., 59 ; *Lansing v. Parker*, id. 288 ; *Butler v. Wentworth*, id., 282 ; *Brown v. Ryckman*, 12 id., 316 ; *Hackly v. Ogmun*, 10 id., 44 ; *Mott v. Burnett*, 2 E. D. Smith, 50 ; *Ormsby v. Douglas*, 5 Duer, 665 ; *Buhler v. Wentworth*, 17 Barb., 649 ; *Hopper v. Hopper*, 11 Paige, 45. 8. The facts stated are proper subjects of counter-claim in this action. (1.) That the want of title and seizin to the lands belonging to Co. No. 2, the failure to convey the Grant and Green county lands, and the refusal to transfer the certificates, are proper grounds of counter-claim, see 15 Wis., 410 ; *Walker v. Wilson*, 13 id., 522. (2.) The disturbance, by the suit in the district court, of defendant's title and his power of using and selling the property, was a breach of the covenant for quiet enjoyment. Rawle on Cov., 185–188 ; 2 Sug. Vend., 96 ; *Hunt v. Danvers*, T. Raym., 370 ; *Crosse v. Young*, 2 Shower, 415 ; *Lloyd v. Tompkies*, 1 Term, 671 ; *Sedgwick v. Hollenback*, 7 Johns., 376 ; *Mayor &c. v. Maybie*, 3 Kern., 151. (3.) Slander of title, especially when it consists in denying that any title was conveyed by the instrument which was the consideration of the promise sued on, is a cause of action in favor of the grantee connected with the subject of the plaintiff's action. See *Ainsworth v. Bowen*, 9 Wis., 348 ; *Stow v. Yarwood*, 14 Ill., 424 ; *Brigham v. Hawley*, 17 id., 38 ; *Tinsley v. Tinsley*, 15 B. Mon., 454 ; *Allaire Works v. Guion*, 10 Barb., 55. 9. If the matters set up were causes of action in defendant's favor, th objection that they were not proper subjects of counter-claim was too late, after a reply. 10. If it be objected that some of the counter-claims consist of causes of action against *Akerly* and Mrs. Lord *jointly*, we answer (1.) All breaches of the con-

tract in pursuance of which the bonds were given, may be insisted upon in any suit, by whomsoever brought, to the amount of the bonds. (2.) The slander of title was the act of *Akerly* alone. (3.) We do not concede that Mrs. Lord would have been a proper defendant in a suit for breach of her and *Akerly's* joint agreement. A married woman was not liable at common law certainly, upon her covenants. (4.) Mrs. Lord, being a non-resident, could not be sued in this state, while, if *Akerly* were here, he might be sued, she being nominally joined. *Akerly* having by this action placed himself within the jurisdiction of the court, the counter-claims can be enforced against him without reference to Mrs. Lord.

DOWNER, J. These are cross appeals from the same judgment. *Akerly* brought his suit to foreclose a mortgage given by the defendant *Vilas* to secure three bonds conditioned for the payment of $13,000, which is the purchase money for certain lands in Prairie du Chien, and in Grant and Green counties.

The first question for our consideration is: Has *Vilas* the right to rescind the contract for the purchase of these lands?

The title to the lands was in Louisa S. Lord, wife of Frederick W. Lord, and *Jay Camiah Akerly*. A part of the lands at Prairie du Chien had been conveyed to the trustees of Prairie du Chien Land Companies No. 1 and No. 2, and was represented by 100 shares of Co. No. 1 and 150 shares of the stock of Co. No. 2, held and owned by *Akerly* and Mrs. Lord. A conveyance, being a full covenant deed of the lands at Prairie du Chien, was executed to *Vilas* by *Akerly* and Mrs. Lord, acting by Mr. Lord as their attorney in fact, in which Mr. Lord joined, bearing date September 4th, 1855; and in this deed, after conveying certain lands described by lots and blocks, they assign the 250 shares of stock, and transfer or convey all the lots, blocks, stock and property of every

description, owned by them either jointly or separately, in Prairie du Chien. Mr. Lord, not having any authority from *Akerly* to convey the lands in Grant and Green counties, being 240 acres owned jointly by Mrs. Lord and *Akerly*, at the same time executed and delivered to *Vilas* an agreement by which he, Frederick W. Lord, agreed, by the first of October, 1855, to execute and deliver to said *Vilas* a deed of the last mentioned lands ; and to procure from Mrs. Lord and *Akerly* a good and sufficient deed of the same lands, and deliver the same to Vilas; and in case of a failure, Frederick W. Lord agreed to pay to *Vilas*, on his demand therefor, the full cost and value of the Green and Grant county lands, as fixed and settled damages, to be paid to said *Vilas* or deducted from the first payment on the bonds. Lord also executed to *Vilas* another agreement of the same date, in which he agreed to send to *Vilas*, duly assigned to him, the certificates of shares in the land companies held by the grantors in the deed of conveyance to *Vilas.* The deed of lands in Grant and Green counties, and the certificates, have never been delivered to *Vilas.*

*Akerly* filed his bill in the United States district court for the district of Wisconsin to rescind the sale and set aside the deed ; and *Vilas*, in November, 1856, answered that bill, admitted that he had taken possession of the lands conveyed to him, and averred that he had sent the first year's interest on he bonds to the American Exchange Bank (where it was made payable), at or before the time it became due, and that it remained there still for Mrs. Lord and *Akerly*, unless they had received it. He denied all fraud, and maintained the validity of the transaction.

*Vilas* states in his testimony, that in January, March, May and June, 1856, and subsequently, he sold and conveyed portions of the lands, and received about $4,500 for those sold ; also, that he leased and received rent for a part after that time, and has never been disturbed in his possession; that up to

the spring of 1859 he tried the best he could to possess and enjoy them; and sin e that time he has taken charge of the property to await such decision as might be made with regard to his rights thereto.

At the November term, 1856, the trustees of Land Co. No. 2 commenced a suit in the Crawford circuit court for the partition of the lands held by them as trustees.   To this action *Vilas* was a defendant, and set up his claim as owner of the land and of the certificates of shares in the land companies assigned to him by the deed from *Akerly* and Mrs. Lord.   *Akerly* also was defendant, and filed an answer, which was struck off; and he filed another, in which he claimed the land, and set up the pendency of the suit in the United States court to rescind the sale and cancel the deed:   At the June term, 1859, *Akerly* withdrew his answer, and he had previously discontinued the suit in the United States court; and soon thereafter he commenced this action to foreclose the mortgage executed to him and Mrs. Lord to secure the purchase money of the bonds, and avers that Mrs. Lord has assigned her interest in the bonds and mortgage to him.

It is obvious from these statements that to rescind the contract at this time, or grant any relief equivalent to to it, would violate nearly every principle which courts of equity have long acted on in such cases.   If *Vilas* ever had the right to rescind, he certainly had a knowledge of all the facts which would entitle him to a rescission when he defended the suit of *Akerly* in the United States court; when he sold at divers times portions of the lands conveyed to him; when he paid or offered to pay the interest on the bonds; and when he maintained his title in opposition to the claim of *Akerly* in the partition suit.   Either one of these acts, it appears to us, was a ratification of the contract.   The delay of several years to tender back a deed of the lands conveyed to him, and to seek, himself, a rescission, is alone conclusive against his claim to rescind.

But it is said that the deed, bonds and mortgage were delivered *conditionally*, or that the bonds and mortgage were never delivered. We think the answer of *Vilas* to the bill in the United States court, and his testimony, are clear and conclusive evidence to the contrary.

2. Does the defendant, in the first defense in his answer, state facts constituting an entire or partial defense to the action? He sets up the agreement respecting the conveyance of the Grant and Green county lands and the delivery of the certificates of stock, and avers the non-conveyance of the lands and the non-delivery of the stock. He sets out also the prosecution of the suit in the United States court, and the defense of the partition suit, by *Akerly*. Lord, in his agreement with *Vilas*, stipulated that if the Grant and Green county lands were not conveyed by the first of October, 1855, "*he would pay to said Vilas, on his demand therefor, the full cash value of the same as fixed and settled damages, to be paid to said Vilas or deducted from the first payment on the bonds.*" It appears from this that the non-conveyance of the Grant and Green county lands was not only not to be any cause for rescinding the contract, but that in case of failure, by the first of October, to deliver the deed conveying them, the defendant had a right after that to refuse the deed, and insist on their value being paid to him or deducted from the first payment on the bonds. These lands are a part of the consideration of the bonds and mortgage, and it is but equitable that their value, whatever it may be, should be deducted from the plaintiff's claim ; and to this extent there is a failure of consideration, and the defense is good.

3. Is the defendant entitled to any relief in this action by reason of the non-delivery of the certificates of stock in the land companies? It was urged upon the argument that the certificates and their delivery were a part of the consideration of the bonds and mortgage. But we hardly think this position tenable, after the execution and delivery of the deed to *Vilas*

in which these very certificates were sold and transferred to him, and all the interest of the grantors in the lands represented by them. The lands were the only consideration. The non-delivery of the certificates could affect the consideration only as it affected the title to the lands. If the title in *Vilas* would be the same without their delivery as with it, then the failure to deliver them is not a partial failure of consideration. We see no reason why, if *Akerly* and Mrs. Lord owned the certificates when the deed to. *Vilas* was executed, the deed did not convey, transfer to and vest in *Vilas* all the legal and equitable title which the grantors had, as fully as if there had been a formal delivery of the certificates. If Vilas had had the possession of the certificates, the land companies or their trustees might, perhaps, have more readily acknowledged his rights; and in case of litigation, proof of his interest might have been more easily made. But he had in equity the title without the certificates; and if they had been delivered to him, he would then have had only an equitable title. We think, however, the plaintiff and Mrs. Lord ought to have delivered the certificates. No good reason is shown why they did not. But we are of opinion that the defendant is not entitled to recover damages in this suit for their non-delivery. *Durkee v. Stringham*, 8 Wis., 1. He may have a remedy, perhaps, on the personal contract of Mr. Lord.

4. The next question is: Was the defendant rightly compelled to elect which of the defenses set up in his answer he would rely upon? Were the defenses in fact inconsistent? We are unable to find in the first defense set out in the answer, averments of facts showing that either the deed to *Vilas* or the mortgage to *Akerly* and Mrs. Lord were delivered conditionally, or averments showing that either of these instruments is not valid and in force. The words "conditional sale" are used in the first defense and applied to the transaction, but the facts

set out clearly, to our minds, make an absolute sale of the Prairie du Chien lands. It may be that the defendant intended to aver that the bonds and mortgages were delivered to Frederick W. Lord with the understanding that they should not be delivered to the mortgagees before the certificates were delivered and the Grant and Green county lands were conveyed, but there is no averment in the answer which, taken in connection with the others, can be considered an averment to that effect. He avers that he "delivered the bonds and mortgage to Frederick W. Lord, and never delivered the same, or caused them to be delivered, to the plaintiff or Mrs. Lord, or to any other person or persons in any manner whatsoever." Frederick W. Lord was the agent of the plaintiff and Mrs. Lord, and came to Wisconsin with powers of attorney from them for the very purpose of making sale of their lands, as the defendant avers, and did sell and convey those at Prairie du Chien, by virtue of the powers of attorney, to the defendant, and delivered the deed to him, and at the same time agreed to procure a conveyance of the Grant and Green county lands and deliver that and the certificates of stock to the defendant. When, therefore, the defendant avers that he delivered the bonds and mortgage to Mr. Lord, he avers a delivery to the plaintiff and Mrs. Lord by delivering the same to their agent; nor can the averment which immediately follows, that he never delivered the same or caused them to be delivered to the plaintiff and Mrs. Lord, or to any other person or persons, in any manner whatsoever, negative or qualify the effect of the delivery to Lord as agent of the plaintiff and Mrs. Lord. To have had such effect, he should have shown by affirmative averment that they were delivered to Mr. Lord for some other purpose than delivery to his principals, or that they were not to be delivered to them until the stock or the deed of the Grant and Green county lands, or both, were delivered to the defendant. And to put the unconditional delivery of the deed to *Vilas* beyond all question,

*Vilas* himself avers in his first defense that he went on and sold part of the lands therein conveyed to him. And if the deed to *Vilas* was delivered unconditionally, it requires certainly very clear and unequivocal averments that the bonds and mortgage were delivered to Mr. Lord not as a delivery to his principals but for some other purpose, and that purpose should clearly appear. It follows that the first defense is not inconsistent with the counter-claims, and the circuit court erred in compelling the defendant to elect which defense he would rely upon, unless the counter-claims are such as could not be set up as counter-claims in this action.

5. We will next consider whether the first counter-claim of the defendant is good and well pleaded. It sets out, *inter alia,* the deed of the lands to *Vilas*, including the covenants therein, and avers breaches of the covenants. Can we take into consideration this cause of action in this case, and allow the defendant to recover thereon?

Before the code it was well settled, that in suits brought to foreclose mortgages for the purchase money, in which the mortgagor, being in possession of the lands, set up a partial failure of title as a defense, without averring *an actual eviction or an action of ejectment brought, or that he was in any way disturbed in his possession,* the court would not interfere, but leave him to his action at law. *Van Wagoner v. McEwer*, 1 Green Ch. Rep., 412; *Abbott v. Allen*, 1 Johns. Ch., 213; *Pratt v. Gilchrist,* 1 Sandf., S. C., 118; *Simpson v. Hawkins,* 1 Dana, 305; Rawle on Cov. for Tit. (3d ed.), 676 to 686. Courts of equity declined to go into such defenses, because title to lands could better be tried in actions at law, and the damages were often unliquidated and not the subject of set-off; and also because the possession of the defendant, being undisturbed, might ripen into a perfect title. But the code allows a counter-claim to be set up in an answer to a foreclosure action, as well as in others. It is no objection to such counter-claim or claims, that the dam-

ages are unliquidated, or that the claims are legal or equitable, or both; for claims legal or equitable, for liquidated and unliquidated damages on contract, may all be set up in the same answer. The defendant who sets up by way of *counter-claim* a cause of action based upon the covenants in a deed, is entitled to recover the same damages as he would have recovered if he had brought a separate action on those covenants. If he declares upon the covenant of seizin and alleges breaches, it is no defense to his claim, that he is in undisturbed possession of the premises. He has a right to recover his actual damages, whatever they may be, the same as in a suit at law before the code. *Walker v. Wilson*, 13 Wis., 522; *Hall v. Gale*, 14 Wis., 54.

Can the defendant set up the breach of the covenants in the deed as a counter-claim without making Mrs. Lord, who is jointly liable on the covenants (inasmuch as these are covenants made by her on conveying her separate property), a party? If the defendant *Vilas* had brought a separate action on the covenants in the deed to him, he must have made all the grantors, who were liable on the covenants, or the survivors, parties; or advantage of the want of parties might have been taken by demurrer or answer. But if not so objected to, the defect would have been waived. The same holds true as to a counter-claim. *Schubert v. Harteau*, 34 Barb., 449; *Briggs v. Briggs*, 20 Barb., 447; *Cummings v. Morris*, 25 N. Y., 625. There being no objection in the replication of the plaintiff because Mrs. Lord is not before the court, we must hold the first counter-claim, so far as it sets out a cause of action on the covenants, good. It follows that the circuit court erred in compelling the defendant to elect which of the defenses set up in his answer he would go to trial on, and in striking out the first counter-claim.

6. Can the defense of malicious prosecution, or slander of title, be set up as a counter-claim in this action? If so, it is because it is allowed by the first subdivision of section 11,

chapter 125, R. S., which gives the defendant the right to set up as a counter-claim " a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action."

Is the claim for damages for the alleged malicious prosecution, or slander of title, a cause of action arising out of the bonds and mortgage set out in the complaint? Clearly not. If the slander of title constitutes a cause of action at all, it arises out of *Akerly's* suit in the United States court, or out of the partition suit, or *Akerly's* pleadings or proceedings in those suits. It arises out of a *wrongful act or acts*, and not out of the contract set out in the complaint. Is it connected with the subject of the action? How is it connected with the mortgage? It is based upon and directly connected with the alleged wrongful acts of *Akerly* in the former suits. Those suits and acts were connected with the deed to *Vilas*, and the deed with the bond and mortgage. Thus the slander of title, or malicious prosecution, is *indirectly* or *remotely* connected, if at all, with the subject of the action. We are of opinion that a cause of action set out in a counter-claim is, within the meaning of the statute, connected with the subject matter of the plaintiff's action, only when it is *directly* connected ; or so connected that a cross bill would have been sustained, or recoupment allowed, under the former practice. This excludes the counter-claims setting up slander of title, or malicious prosecution.

On the appeal of *Akerly*, the judgment of the circuit court must be reversed, with costs, and the cause remanded for further proceedings. If the appeal of *Vilas* had been heard by itself, the judgment would have been affirmed; for it is not, on the whole, to his prejudice or injury. But as the judgment must be reversed on the appeal of *Akerly*, and as there was error in entering the order compelling *Vilas* to elect which of

the defenses set up in his answer he would go to trial on, that order, on his appeal, must be reversed, with costs, except his disbursements for printing the evidence.

*By the Court.*—Ordered accordingly.

DIXON, C. J., dissents.

Both parties moved for a rehearing.

DOWNER, J.    The counsel for the defendant *Vilas* contends in his argument on the motions for a rehearing, that the plaintiff, by replying to the counter-claims in the answer, waived all objections thereto.    It is not necessary for us to decide what the effect of the replication, followed by a trial of the issue thus formed, and a judgment thereon, would have been ; for we are of opinion that if, within a reasonable time after the remittitur is transmitted to the circuit court, the plaintiff shall there move for leave to withdraw the replication to so much of the answer as sets up the counter-claims not authorized by the statute, and to demur to such counter-claims, the circuit court ought to grant the motion.

*By the Court.*—The motions for a rehearing are each overruled.