[No. 1625. Decided February 1, 1895.]

KATE DECKER et al., Appellants, v. AUGUST SCHULZE et al., Respondents.

SALE OF LAND — FAILURE OF TITLE — RESCISSION OF EXECUTED CONTRACT — PLEADING.

In an action by a vendee to rescind a contract for the conveyance of land, on the ground of failure of title of the vendors, the complaint does not sufficiently allege defect of title when it states that the grantors "were not seized in fee or possessed of the right to sell and convey" the premises in controversy.

An executed contract for the conveyance of land cannot be rescinded on account of failure of title as to a portion of the land, unless fraud or other equitable grounds warrant the interposition of equity, the proper remedy being an action for damages.

*Appeal from Superior Court, Spokane County.*

*A. H. Kenyon,* and *Jones, Voorhees & Stephens,* for appellants.

*William A. Huneke,* for respondents.

The opinion of the court was delivered by

GORDON, J.—The complaint in this action shows in substance:

1. That on November 17, 1890, the respondents sold to appellant Kate Decker two adjoining tracts of land in Spokane for $5,500, giving their deed containing a covenant that they were owners in fee, and with covenants of general warranty, and receiving from appellant Kate Decker part payment of the purchase price in cash, and appellant's mortgage on said land to secure the remainder.

2. That thereafter appellants made payments on said remainder, the last one on December 18, 1891; and that they paid the taxes on said land regularly for three years.

3. That the respondents were not "seized in fee or possessed of the right to sell and convey the last described portion of said property" (being a strip lying at the north end of the entire premises) "in manner and form as aforesaid."

4. That the remainder of the premises without the strip was useless for appellants' purposes.

5. That prior to bringing suit, appellants tendered deed of said land to respondents, which would have placed them *in statu quo,* and demanded back the purchase money paid; all of which was refused by the respondents.

Appellants ask for a rescission of the sale, for the return of the purchase money paid, and for a vendee's

lien on said land to secure said purchase money. The complaint is very voluminous, and to set it out in full would occupy too much space. The foregoing statement is sufficient, however, to give a proper understanding of it. Respondents interposed a general demurrer, which was sustained by the lower court, and appellants electing to stand on their complaint, judgment of dismissal was entered, and from such order and judgment this appeal is prosecuted.

Appellants, for a reversal of the judgment, rely upon the cases of *Sears v. Stinson*, 3 Wash. 615 (29 Pac. 205), and *Moody v. Spokane, etc., Street Ry. Co.*, 5 Wash. 699 (32 Pac. 751).

In *Sears v. Stinson*, the land was sold and a deed with full covenants given. The purchaser paid the purchase price, and the title failed to a strip. The purchaser in that case brought his action for damages on the breach of the covenant for seizin, strictly an action at law; while in the case at bar the appellants brought this action to rescind the sale, purely an action in equity. In *Sears v. Stinson*, the question for determination was whether an action for damages was the proper action, while in the case at bar the question is whether equity will rescind on the facts stated.

This court, in the *Sears* case, held that an action at law for damages on the breach of covenant was properly maintainable, and was not called upon to decide any other question in the case; and the language of the court: "There is no doubt but that the plaintiff would be entitled to the equitable relief of a rescission of the contract, if he desire it," found on page 616, was merely an unguarded expression not at all necessary to the decision of the case, and mere *obiter dictum*. The court, moreover, on page 617, states forcibly the doctrine upon which the case was decided, viz.:

" But in this case the contract, so far as it can be enforced, is already performed, and *there is nothing to give a court of equity jurisdiction. Damages for the balance is all that is left.*"

The case of *Moody v. Spokane, etc., Street Ry. Co.*, *supra*, is also wholly inapplicable to the case at bar, both upon the facts and the principle involved. In that case the respondent brought suit upon a contract which he himself had not performed. The court said:

"If the respondent had not performed his part of the contract  .  .  .  he could not commence this action. On the other hand, the appellant would have the right to rescind the contract."

The opinion in that case further proceeds as follows:

"It is not the ordinary case of a breach of a covenant in a deed, *where the remedy would be a suit on the warranty*, but the respective contracts here are dependent upon each other."

We are entirely satisfied with the result reached by this court in each of those cases, but are unable to conclude that either of them is authority in support of appellants' contention here.

The sole allegation of defect or failure of title is alleged in the complaint, paragraph nine, to be that " they (the grantors) were not seized in fee or possessed of the right to sell and convey the last described portion of said property, in manner and form as aforesaid." This is, at most, equivalent merely to a statement that their interest in the granted premises was less than a fee simple estate, and cannot be held to be equivalent to an allegation that they had no estate or interest in the premises. We think this is wholly insufficient to constitute good pleading at law or in equity. There are two descriptions in the deed; as to one tract, no question of title is raised; as to the other, it is in effect

said that the grantors had not a fee simple estate, and without stating how far their actual estate or interest falls short, and without any statement as to the true condition of the title from which relief could be afforded at law or in equity, appellants, after a lapse of nearly four years, ask a court of equity to rescind the contract.

"It it is a dangerous and delicate operation for a court to pass upon a title which nobody is asserting, and no one disputing." *Key v. Jennings*, 66 Mo. 356.

For this reason alone, if no other existed, we would be disposed to affirm the judgment.

Assuming the fact to be, however, that title to one of the tracts conveyed has wholly failed, and that it was the design of the pleader to so allege, a very interesting question is presented, concerning which Chief Justice Sharkey, in *Parham v. Randolph*, 4 How. (Miss.) 435 (35 Am. Dec. 403) says :

"The extent to which courts of chancery will go in giving relief to the vendee of land by preventing the collection of the purchase money, and rescinding the contract, is a question which is much embarrassed by conflicting adjudications. It has been often litigated, but the numerous decisions seem to have increased rather than diminished the doubts."

Appellants, by their complaint, invoke the equity powers of the court to procure a rescission. Respondents concede that appellants have a right of action, but insist that it must be at law for damages. Here let us remark that a court of equity is not an appropriate tribunal for the trial of title to land. As is said by Chancellor Kent, in *Abbott v. Allen*, 2 Johns. Ch. 519 (7 Am. Dec. 554):

"This court may, perhaps, try title to land when it arises incidentally; but it is understood not to be within its province, when the case depends upon a simple legal title, and is brought up directly by the bill. The

power is only to be exercised in difficult and complicated cases, affording peculiar grounds for equitable interference. . . . The plaintiff has the means of bringing the legal title to a test, whenever he pleases, by an action at law on his covenant of seizin."

The complaint in this action nowhere alleges any fraud, concealment or misrepresentation on the part of the respondents concerning the title to the premises conveyed, unless fraud is to be inferred from their covenant of ownership coupled with failure of title to a portion of the premises conveyed. It is nowhere charged that they had knowledge of any fact affecting the title which was concealed from appellants, nor is it asserted that the respondents are either insolvent or non-residents of this state. It concedes that at all times since the deed was given the appellants have been in possession of the premises, and have paid taxes thereon for years, and neither alleges eviction nor that they are threatened with suit on the part of any one holding or claiming an older or superior title thereto. And if, as has been sometimes asserted, a covenant in a deed that the grantor is the "owner in fee" differs from the covenants of quiet possession, warranty of title and the like, and that a breach occurs at once if ownership in fee does not in fact exist, and that the vendee is not required to await eviction before maintaining his action, we are nevertheless unable to conclude that equity has any jurisdiction to afford the relief here prayed.

It is fundamental that equity will not interfere where the law affords a plain, adequate and complete remedy.

"The remedy must be plain, for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate, for if it falls short of what the party is entitled to, that founds a jurisdiction in

equity. And it must be complete, that is, it must attain its full end at law. It must reach the whole mischief, and secure the whole right of the party." Mitford, Ch. Pleading (6th Am. ed.), p. 2, note.

"Covenants for title, like all other covenants, are of course mere contracts. . . . For a breach of contract, the common law provided a single remedy, a recompense in damages." Rawle, Covenants for Title, § 354.

Here is a contract which has been fully executed; nothing remains to be performed; the consideration has been paid, the conveyance executed, and full covenants have been given and accepted. There is no suggestion of insolvency or non-residency, or that the plaintiff's remedy at law would not be adequate. Hence we do not find any good reason for interference by a court of equity.

It seems to us that much of the apparent conflict that is found in the adjudicated cases on this subject is due to a failure to observe the distinction which obtains between the rules applicable to a contract still executory and one actually executed.

"The distinctions between the rules which govern the relation of vendor and purchaser before and after the execution of the deed — while the contract is still executory, and after it is executed — are broad and familiar. Although the general principles of the contract of sale of real estate, both in this country and in England, exact less of a vendor than the rules of the civil law demand, yet, while the contract is still executory, they recognize and enforce the right of the purchaser to a title clear of defects and incumbrances, and this right does not depend upon the terms of the contract, but is given by the law; and is not, except in particular cases, affected by the nature and extent of the covenants for title which the purchaser is to receive." Rawle, Covenants for Title, § 319.

"Generally speaking, a purchaser after a conveyance has no remedy, except upon the covenants he has obtained, although evicted for want of title; and however fatal the defect of title may be, if there is no fraudulent concealment on the part of the seller, the purchaser's only remedy is under the covenants." 1 Sugden, Vendors, p. 383; *Rawlins v. Timberlake*, 6 T. B. Mon. 225; *James v. McKernon*, 6 Johns. 543; *Bumpus v. Platner*, 1 Johns. Ch. 213.

And Lord CAMPBELL, in *Wilde v. Gibson*, H. L. 1 Clark & Fin. (N. S.) 605, says of this distinction:

"If there be, in any way whatever, misrepresentation or concealment, which is material to the purchaser, a court of equity will not compel him to complete the purchase; but where the conveyance has been executed, I apprehend that a court of equity will set aside the conveyance only on the ground of actual fraud."

In *Thompson v. Jackson*, 3 Rand. (Va.) 504 (15 Am. Dec. 721), Justice CARR says:

"Executory contracts for real property, and some other subjects, offer to the party the alternative of either suing at law for damages, or asking the aid of equity to obtain the specific thing. . . . Very different is the question, where a party asks the court to rescind a contract, especially an executed contract. In the first case, the court merely decides which of two remedies a party shall pursue. In the second, it annihilates a solemn contract, rendered still more imposing by the fact that the parties have carried it into execution. . . . The vendor has parted with the title and possession of his land, and has taken his money, bonds, or other equivalent. The vendee has entered into possession, . . . and for security of his title has taken a deed with such covenants and warranty as his contract called for. To undo all this is a strong-handed measure, and none but a clear and strong case will justify it. Accordingly, we find it laid down in all the equity books, that the court is in the

daily habit of refusing the specific execution of con-
tracts; *which, at the same time, it just as promptly re-
fuses to rescind.  . . .*  When the application is to
rescind an executed contract for land, the English
books lay it down as a general rule (admitting of but
few exceptions), that to justify such decree, fraud must
appear; and this fraud must be distinctly put in issue
by the pleadings.   If the charge be a mere failure of
consideration, arising from the sale of the defective
legal title, unmingled with fraud or *mala fides* of any
kind, it is generally laid down that the vendee will be
left to the covenants and warranty in his deed."

" Where a contract for the sale of land has been exe-
cuted by the giving of a conveyance, the court of
chancery will not rescind the contract upon the ground
of a mere defect of title, where there has been no fraud
on the part of the vendor, but will leave the purchaser
to his remedy upon the covenants in his deed." *Wood-
ruff v. Bunce,* 9 Paige Ch. 443 (38 Am. Dec. 559).

In *Denston v. Morris,* 2 Edw. Ch. 37, it is said:

" It is a well settled rule of this court, that a grantee
to whom possession has been delivered, under cove-
nants of title and warranty, can have no relief in
equity against his grantor for a return of the purchase
money or security on account of defect or failure of
title; *because he has taken care to secure himself by cove-
nants,* and, if evicted, can have an adequate remedy at
law.  . . .   But, if fraud is shown, either in making
the contract of sale or in executing it, and whether
there be covenants inserted in the deed to secure the
title or not, the purchaser, in case of eviction or dis-
turbance of his possession, or whenever it is ascer-
tained that the title is defective, may come into this
court to be relieved from his purchase or to obtain in-
demnity against the consequences of the fraud.   Im-
position and fraud upon the purchaser *by any willful
misrepresentation or concealment take the case out of the
general rule,* and entitles him to be redressed in equity,
in addition to and beyond the covenants in the deed."

And in *Wiley v. Fitzpatrick*, 3 J. J. Marsh, 582, it is said:

"The remedy which a court of law can afford in such cases, unless some extraneous circumstances intervene to prevent it, is fully adepuate to all the demands of justice; and that is a sufficient reason why a court of chancery will not interpose."

" A purchaser of land who has paid part of the purchase money, and given a bond and mortgage for the residue, and is in undisturbed possession, will not be relieved against the payment of the bond, or proceedings on the mortgage, on the mere ground of a defect of title, there being no allegation of fraud in the sale, nor any eviction; but must seek his remedy at law upon the covenants in his deed."

"If the purchaser was imposed on *by any intentional misrepresentation or concealment* he may have redress [in equity] in addition to and beyond his covenants." *Abbott v. Allen*, 2.Johns. Ch. 519 (7 Am. Dec. 554).

" It is requisite that the charge of fraud should be made a distinct ground of allegation by the party in pleading, otherwise it is not to be deemed an issue, and cannot affect the contract in question." *Gouverneur v. Elmendorf*, 5 Johns. Ch. 79.

In that case Chancellor KENT says :

"A vendor, selling in good faith, is not responsible for the goodness of his title, beyond the extent of the covenants in his deed."

In *Patton v. Taylor*, 7 How. 159, the supreme court of the United States, speaking through Mr. Justice NELSON, say :

" A purchaser, in the undisturbed possession of the land, will not be relieved against the payment of the purchase money on the mere ground of defect of title, there being no fraud or misrepresentation; and that, in such a case, he must seek his remedy at law on the covenants in his deed."

In *Simpson v. Hawkins*, 1 Dana, 303, it is said that—

"A contract for the sale of land, unaffected by fraud, cannot be rescinded in chancery after it has been carried into effect by a conveyance. . . . If the grantee in possession *loses part of the land, he may recover, on the warranty, damages commensurate with the loss; but it is not cause for rescinding the whole contract.* . . . I regard it (says Judge UNDERWOOD in that case) as immaterial whether the vendors had any title at all. If they conveyed with warranty, and put the vendee in possession, I hold that there can be no rescission of the contract where there has been no fraud, no eviction, and no assertion of an adverse claim."

This case is cited approvingly by the supreme court of the United States in *Patton v. Taylor, supra*.

"Where a conveyance of land has been made by a deed, executed with covenants of warranty, and a note has been received in consideration of the conveyance, a partial failure of title will not constitute a defense to the note, but the remedy of the party must be by suit on the covenants of his deed." *Chase v. Weston*, 12 N. H. 413.

In *Knapp v. Lee*, 3 Pick. 452, it is said to be in dispute in Massachusetts whether a total failure of covenants of warranty of land would constitute a defense to a note, but no doubt exists that a partial failure of title is not permissible as a defense.

In Maine it has been held that the total failure of title constitutes no defense to a note given for consideration money. *Lloyd v. Jewell*, 1 Greenl. 352 (10 Am. Dec. 73); *Jenness v. Parker*, 24 Me. 289.

In the case of *English v. Thomasson*, 82 Ky. 281, the court say:

"It has been repeatedly held by this court that, in the *absence of fraud, or insolvency, or non-residency* of the vendor, that a vendee in the peaceable possession of the granted premises by virtue of a conveyance containing

a covenant of general warranty, is *not entitled to a rescission of the contract* when sued for the purchase money, although the vendor may, at the time of the sale, have represented his title as perfect, when, in fact, it was not; and that in such a case the vendee must pay the money, and rely upon the covenant of warranty in case of an eviction. . . . A *mere mistake, or error of opinion, as to the validity of his title would not constitute a fraud. The warranty, which the appellant chose to accept, was designed to protect him against such a misrepresentation, and is effective for that purpose;* and he must await an eviction, if it ever occur, and then look to his remedy at law upon the covenant in his deed."

We have already suggested in this opinion that a covenant on the part of a grantor that he is the "owner in fee" of premises conveyed, when, in fact, his title fails or is defective, might give an immediate right of action to his grantee, and unlike covenants of quiet possession, warranty of title, and the like, the grantee would not be obliged to await eviction, but for a breach in either case, in the absence of strong equitable considerations not disclosed by the bill in this case, we hold that his remedy is at law for the damages sustained.

In *Edwards v. McLeay*, 10 Eng. Ch. 308, the bill charged, and the court found the fact to be, that the vendor knew and concealed a fact material to the validity of his title, and that the defect could not have been ascertained from the abstract. A rescission was decreed, the learned master of the rolls holding that if the vendor knows and conceals a fact material to the validity of his title, of which fact the vendee is ignorant, relief (in equity) is to be afforded to the purchaser. This case has been often cited in support of a view of the law contrary to that we have taken, but it will be observed that the facts there charged and

found differ very materially from those alleged in
this bill. It was there asserted that the vendor knew
at the time of the sale that a large portion of the
granted premises was claimed by the parish as a pub-
lic common. This fact he concealed from the pur-
chaser, and the abstract did not disclose it. The court
granted a rescission, holding that the vendor's silence
concerning it when he knew of the assertion of such
adverse claim constituted such fraud as warranted the
interposition of equity. And Lord ELDON, in affirm-
ing the judgment of the master of the rolls, upon
appeal, said:

" That if one party makes a representation which he
knows to be false, but the falsehood of which the other
party has no means of knowing, this court will rescind
the contract." 2 Swanston, 302.

It will be observed that the chancellor, in affirming,
placed it upon the assumption that the seller knew the
representation to be false.

There are cases wherein the jurisdiction of equity
has been asserted upon facts similar to those alleged
in the complaint in this case. Among the leading
cases so holding is *Parham v. Randolph, supra,* in
which the learned chief justice of Mississippi, in sup-
port of the position there taken, quotes Chancellor
KENT as follows:

" The good sense and equity of the law on this sub-
ject is, that if the defect of title, whether of lands or
chattels, be so great as to render the thing sold unfit
for the use intended, and not within the inducement
to the purchaser, the purchaser ought not be held to
the contract, but be at liberty to rescind it altogether."
2 Kent, Comm. 475.

An examination of the entire section, and particu-
larly that part immediately preceding the language

above quoted, makes it manifest, however, that the learned chancellor was there referring to contracts that are executory merely. The views of that distinguished jurist upon the questions involved in the determination of this case are to our better satisfaction found in the cases of *Abbott v. Allen* and *Gouverneur v. Elmendorf, supra.* And it seems to us that the reference by the learned judge in *Parham v. Randolph* to the case of *Greenleaf v. Cook*, 2 Wheat. 13, is equally unfortunate. Defendant in that case, in an action on a promissory note given for the purchase price of real property, set up by way of defense a prior outstanding mortgage and a decree of foreclosure, of which mortgage it was shown that he had no knowledge at the time of purchase. Upon these facts, the court, speaking through Chief Justice MARSHALL, say :

" The note was given with full knowledge of the case. Acquainted with the extent of the incumbrance, and its probable consequences, the defendant consents to receive the title which the plaintiff was able to make, and on receiving it, executes his note for the purchase money. To the payment of the note given under such circumstances, the existence of the incumbrance can certainly furnish no legal objection."

This was the sole question determined in that case.

*Woods v. North*, 6 Humph. 309 (44 Am. Dec. 312), is another case frequently cited in support of the contrary doctrine. The court there say :

" In this deed there is a covenant of seizin in which the defendant asserts that he has a right to sell and convey this land. Here is an express misrepresentation."

In that case the sole representation of title was confined to that expressed in the covenant contained in the deed. There being a superior outstanding title, a

rescission was decreed. We think the misrepresentation which will entitle a party to rescind an executed contract must be something more than the statement of the vendor of what he innocently and in good faith believes to be true without knowledge or notice of any fact affecting his title, and especially where the vendor is not insolvent or a non-resident, and where the vendee has exacted and accepted full covenants.

In a note found on page 639 of his work on Covenants for Title, Mr. Rawle says of this case of *Woods v. North* that, "It is believed that there is no well considered class of cases which give such an interpretation to a covenant."

Nor will equity take jurisdiction in this case on the ground of mutual mistake, although there is some authority for the assertion of such jurisdiction. In the case of *Leal v. Terbush*, 52 Mich. 100 (17 N. W. 713), the plaintiff purchased of the defendant a parcel of land which had belonged to defendant's husband, and to which she had no title excepting a life estate under the will, and a deed was given by her with the usual covenants. The court held that the vendee could not rescind on the ground of mistake as to the vendor's title, as the mistake did not go to the entire consideration; the vendee, supposing the vendor had title in fee, simply accepted of a mere life estate. In the opinion, Judge COOLEY says: .

"He [plaintiff] appears to have provided against the contingencies of her title falling short of the complete fee by requiring of her covenants for his protection. . . . It is certain that the parties took into consideration possible defects in the title, and bargained in respect to them. . . . The conveyance purports to be in fee, and the assurances, we must suppose, are to him, his heirs and assigns. The plaintiff has, therefore, received value for the money paid; and if not to

the full extent of the payment, the deficiency is uncertain, and dependent on contingencies, and does not go to the entire consideration. If this contract can be rescinded on the ground of *mistake of fact,* then every purchase of land the title to which proves in any respect defective must be subject to rescission also, unless the parties have expressly bargained with mutual knowledge that defects existed. *If this were the law, covenants would be of little importance.*"

We deem it unnecessary to multiply authorities in support of this position. The complaint in this action does not allege that the respondents knowingly conveyed what they did not own, or that they concealed any fact affecting the title which was within their knowledge, and which they were bound to disclose; and while it is true that the "arm of equity is long and powerful," it is also true, as is tersely said by Lord NOTTINGHAM, that the "chancery mends no man's bargain." Willful misrepresentation or concealment is nowhere charged, nor can it be ascertained in what respect, or to what extent, the title conveyed by the respondents has failed. They may, for aught that appears to the contrary, well have conceived that they were "seized in fee" of the premises, and have acted in good faith in executing the conveyance, and if, in so doing they have erred in estimating their estate, and the damages flowing from such error are susceptible of definite ascertainment, and the respondents solvent and residents of the state, what occasion is there for the interposition of equity?

There are many expressions to be found in the reported cases, and in text books, that are seemingly antagonistic to the conclusion we have reached in disposing of this case. Of many of them, however, it may be said that they at most are merely "loose *dicta* without any fullness of illustration," and want that

precision which is requisite to give much force to them.

The judgment appealed from is affirmed.

HOYT, C. J., and ANDERS, SCOTT and DUNBAR, JJ., concur.